In the Matter of EXTEN ASSOCIATES, INC., Bankrupt.

Gerald S. KLEIN, as trustee of the Estate of Exten Associates, Inc., Appellee,

v.

TOPSIDE CORPORATION and GAC Limited Partnership, Appellants.

Bankruptcy No. 74–00351–K.
Civ. No. T–80–943.

United States District Court, D. Maryland.

July 21, 1982.

John Henry Lewin, Jr., and Charles M. Kerr, Baltimore, Md., for appellee.

James Robert Miller, Rockville, Md., for appellants.

THOMSEN, Senior District Judge.

This appeal by Topside Corporation (Topside) and GAC Limited Partnership (GAC) is from an order dated 13 March 1980 issued by Bankruptcy Judge Lebowitz in the proceeding entitled In re Exten Associates, Inc., No. 74–00351–K. That order granted a motion of Gerald S. Klein, Trustee of the Bankruptcy Estate of Exten Associates, Inc. (the Trustee), for a preliminary injunction enjoining Topside and GAC from taking certain action with respect to fire insurance proceeds pending the outcome of a plenary suit to determine to whom those proceeds properly belong, as explained below.

The case has recently been assigned to me. In letters dated 24 June 1982, counsel for the respective parties have waived oral argument.

*     *     *

The Exten proceedings in the Bankruptcy Court began on 1 July 1974 when Exten

Associates, Inc. (EAI), Gerald M. Exten[1] and Mary Ellen Exten[2] each filed a petition for an arrangement pursuant to Chapter XI of the Bankruptcy Act of 1898, 11 U.S.C. §§ 701–99 (1976) (the Act). In March 1975, EAI filed a modified plan of arrangement (modified plan), which on 11 July 1975 was confirmed in all three proceedings by an order of Bankruptcy Judge Kaiser.

The modified plan provided that certain unsecured creditors receive, *inter alia,* in settlement and satisfaction of the debts owed them by the debtors, a mortgage in the amount of $500,000 with interest, to be executed by the debtors, on the "real and personal property and business known as Murray's Topside Restaurant and Marina," which consisted of two contiguous properties having separate chains of title.

In June 1976, without an order of the Bankruptcy Court and without notifying its creditors, EAI conveyed the restaurant property to GAC, a limited partnership created in January 1976[3] and consisting of Gary Goldstein (who along with Schimmel & Tatelbaum P.A., of which he was a member, were attorneys of record for EAI), Charles Tatelbaum (who also was a member

of Schimmel & Tatelbaum P.A.), Alvin Pomerantz (who had loaned money to EAI during the Chapter XI proceedings) and Gerald Exten (who was the president and sole shareholder of EAI) as limited partners. Gerald Exten was also named as GAC's sole general partner.[4] GAC then leased the restaurant property back to EAI.[5]

In April 1977, EAI executed what purported to be the mortgage that was required by the modified plan. However, that mortgage covered only the marina property, not the marina and restaurant property as called for in the modified plan.

On 29 December 1978, Bankruptcy Judge Kaiser adjudicated EAI a bankrupt and appointed Gerald S. Klein as its trustee.[6] Immediately thereafter, GAC terminated the lease given to EAI, and on 1 January 1979, GAC leased the restaurant property to Topside, which had been incorporated in February 1977. Gary Goldstein and Charles Tatelbaum served as directors of Topside; Gerald Exten was its majority shareholder and president.

On 20 April 1979, the Trustee instituted a plenary suit in the Circuit Court of Balti-

---

1. In re Gerald M. Exten, No. 74–00359–K. Gerald Exten was president and sole shareholder of Exten Associates, Inc. On 15 July 1981, Judge Lebowitz issued an order adjudicating Gerald M. Exten a bankrupt. Gerald Exten appealed that order, see *Gerald M. Exten v. National Mortgage Corp.*, No. 81–2516.

2. In re Mary Ellen Exten, No. 74–00353–K. Mary Ellen Exten is the wife of Gerald M. Exten. On 15 July 1981, Judge Lebowitz issued an order adjudicating Mary Ellen Exten a bankrupt. Mary Ellen Exten appealed from that order, see *Mary Ellen Exten v. National Mortgage Corp.*, No. 81–2515.

3. GAC was created "to acquire by purchase, lease or otherwise, in its own name or in the name of a nominee a certain real estate commonly known and referred to as Topside Restaurant, Ocean View, Delaware, and to construct improvements thereon, to own, operate, manage, sell or otherwise dispose of any part or all of such property and do all things necessary or convenient to effectuate the construction of such improvements, the ownership, operation and eventual disposition of all or any part of such real estate and all personal property related thereto."

4. Topside and GAC contend that GAC was established to "assist EAI with its financial problem."

5. Topside and GAC state that GAC paid EAI $200,000 in cash and assumed "more than seven hundred thousand dollars in mortgage obligations." When EAI leased the restaurant, it also "took back" a $600,000 mortgage.

6. This court affirmed that order in Exten Associates, Inc. v. National Mortgage Corp. and Sundowner Joint Venture, No. 78–2096 & 79–233 (June 29, 1982). The order adjudicating EAI was entered upon the motion of National Mortgage Corporation and Sundowner Joint Venture, two unsecured creditors of EAI. The bases of that motion were that the debtors had failed to make any of the annual $35,000 interest payments to the creditors, as required by the modified plan, and that EAI alone had executed the April 1977 mortgage even though the modified plan required that all three debtors execute the required mortgage. It is clear from the record that at the time the creditors filed that motion they did not know that the April 1977 mortgage covered only the marina property.

more City to set aside as fraudulent the conveyance of the restaurant property to GAC. That case is still pending.

On 25 June 1979, Topside purchased a policy insuring the restaurant against risk of fire in the amount of $575,000. The policy period ran from 1 July 1979 to 30 June 1980. GAC was named loss payee under that policy. On 4 February 1980, the restaurant was totally destroyed by fire. Upon learning that GAC intended to pay the proceeds of the insurance to Maryland National Bank, which apparently had called due a loan to GAC that was secured by the restaurant and by other collateral put up by several of the limited partners of GAC, the Trustee filed a complaint in the bankruptcy proceeding seeking, under § 2a(15) of the Act, a preliminary injunction directing GAC and Topside to preserve the proceeds of the insurance policy pending the determination in a plenary suit of the bankrupt estate's right to those proceeds. On 4 and 5 March 1980, Judge Lebowitz held a hearing in that case on the Trustee's motion for a preliminary injunction, and on 13 March 1980, entered an Order Granting Preliminary Injunction.[7] The present appeal is from that order.[8]

\* \* \*

In *Blackwelder Furniture Co., Inc. v. Seilig Manufacturing Co.,* 550 F.2d 189 (4 Cir. 1977), and its progeny,[9] the Fourth Circuit adopted the balance of hardship test for determining whether preliminary injunctive relief should issue. GAC and Topside argue that under that test a court must always consider the plaintiff's likelihood of success on the merits. Judge Lebowitz held that because the harm to the Trustee if an injunction did not issue decidedly outweighed the harm to GAC and Topside if an injunction did issue, the Trustee needed only to show that grave and serious questions were presented. Judge Lebowitz held in the alternative that even if the balance of hardship had tipped in favor of Topside and GAC, the preliminary injunction should nevertheless issue because the Trustee had shown a likelihood of success on the merits.

This court has read and considered the opinions of the Fourth Circuit, cited in note 9 above, stating the factors which a court should apply in deciding whether a preliminary injunction should issue. Those opinions make clear that plaintiff's likelihood of success on the merits need not always be considered.

*Blackwelder* directs the District Court to consider first the likelihood of irreparable harm to the plaintiff, as balanced against the likelihood of harm to the defendant. *Id.* at 196. *"If that balance is struck in favor of plaintiff, it is enough that grave and serious questions are presented; and plaintiff need not show a likelihood of success."* *Id.*

---

7. The preliminary injunction provided in pertinent part:

   GAC Limited Partnership and Topside Corporation shall direct the carrier of the insurance policy on the restaurant property formerly known as Murray's Topside Restaurant to pay out those proceeds in the form of a check payable to Gerald Exten and Gerald S. Klein, the Trustee in Bankruptcy; and it is further

   ORDERED that, pending the institution and determination of a plenary suit by the Trustee to recover the proceeds of the insurance policy, the Defendants GAC Limited Partnership and Topside Corporation and the Plaintiff Gerald S. Klein, Trustee in Bankruptcy, shall deposit and maintain those proceeds in a separate interest-bearing account. . . .

8. On 3 September 1980, the Trustee filed in the Bankruptcy Court a complaint, which invoked that court's summary jurisdiction, seeking an order directing certain defendants, including Topside and GAC, to turn over the restaurant property to the Trustee and nullifying any assignment of the fire insurance proceeds to the Maryland National Bank. The defendants therein filed motions to dismiss that complaint; the motions were denied by Judge Lebowitz on August 28, 1981 in an opinion and order. *Matter of Exten Associates, Inc.,* 13 B.R. 818 (Bkrtcy.Md.1981).

9. *E.g., Federal Leasing, Inc. v. Underwriters at Lloyd's,* 650 F.2d 495, 499 (4 Cir.1981); *Wetzel v. Edwards,* 635 F.2d 283, 287 (4 Cir.1980); *Telvest, Inc. v. Bradshaw,* 618 F.2d 1029, 1032–33 (4 Cir.1980); *Maryland Undercoating Co., Inc. v. Payne,* 603 F.2d 477, 481 (4 Cir.1979); *North Carolina Ports Authority v. Dart Containerline Co., Ltd.,* 592 F.2d 749, 750 (4 Cir. 1979); and *Johnson v. Bergland,* 586 F.2d 993, 995 (4 Cir.1971).

(emphasis supplied) *Federal Leasing, Inc. v. Underwriters at Lloyd's,* 650 F.2d 495, 497 (4 Cir.1981).

Four factors enter into the determination of whether to grant or to withhold interim injunctive relief: (a) plaintiff's likelihood of success in the underlying dispute between the parties; (b) whether plaintiff will suffer irreparable injury if interim relief is denied; (c) injury to the defendant if an injunction is issued; and (d) the public interest. There is a correlation between the likelihood of plaintiff's success and the probability of irreparable injury to him. If the likelihood of success is great, the need for showing the probability of irreparable harm is less. Conversely, if the likelihood of success is remote, there must be a strong showing of the probability of irreparable injury to justify issuance of the injunction. Of all the factors, the two most important are those of probable irreparable injury to the plaintiff if an injunction is not issued and likely harm to the defendant if an injunction is issued. *If, upon weighing them, the balance is struck in favor of the plaintiff, a preliminary injunction should issue if, at least, grave or serious questions are presented.*

(emphasis supplied). *North Carolina Ports Authority v. Dart Containerline Co., Ltd.,* 592 F.2d 749, 750 (4 Cir.1979), quoted with approval in *Wetzel v. Edwards,* 635 F.2d 283, 287 (4 Cir.1980).

■ A district court should not set aside findings of fact made by a Bankruptcy Judge unless they are clearly erroneous. Bkrtcy.Rule 810; *e.g., Misty Management Corp. v. Lockwood,* 539 F.2d 1205, 1212 (9 Cir.1976); *Matter of Urban Development Co. & Associates,* 452 F.Supp. 902, 905 (D.Md.1978). The record herein supports the finding that the harm to the Trustee outweighs the harm to GAC and Topside. As Judge Lebowitz stated, "[o]nce the [insurance] funds are paid, they are gone and there is nothing for the Trustee to look to if in fact the Trustee is entitled to those funds." Although GAC and Topside argued before Judge Lebowitz that the harm suffered by them if an injunction issued would

outweigh the harm to the Trustee if an injunction did not issue, they produced little persuasive evidence in support of that contention.

With respect to the question whether grave and serious questions are presented, GAC and Topside do not deny, and there can be no doubt, that plaintiff has raised grave and serious questions, which "are fair grounds for litigation and thus for more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2 Cir.1953), quoted with approval in *Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc., supra,* 550 F.2d at 195. In addition, as Judge Lebowitz found, it is in the public interest "to have a full plenary hearing on this matter and to preserve the status quo until that is completed." See *In re Herz Importing Corp.,* 349 F.Supp. 1106, 1111 (S.D.N.Y.1972).

\*     \*     \*

This court also concludes that even if Judge Lebowitz had based his decision on the Trustee's likelihood of success on the merits, a preliminary injunction should still have issued because, as Judge Lebowitz found, the Trustee had shown such a likelihood.

■ Where a judge bases his findings with respect to plaintiff's likelihood of success on conflicting evidence, the judge's close evaluation of the question merits considerable deference. See *Federal Leasing, Inc. v. Underwriters at Lloyd's, supra,* 650 F.2d at 500. In the case at bar, the parties offer radically different characterizations of the activities of Gerald Exten, Gary Goldstein, GAC, Topside and EAI. This court will not repeat Judge Lebowitz's careful discussion of the facts and theories upon which the Trustee might succeed in a plenary suit. Judge Lebowitz had before him the following, apparently undisputed facts: (1) the modified plan provided that the creditors would receive a mortgage on Murray's Topside Restaurant and Marina; (2) after confirmation of the modified plan EAI, while insolvent and without giving notice either to the creditors or to the bank-

ruptcy court, conveyed the restaurant property to GAC; (3) the limited partners of GAC, in addition to Gerald Exten, included an attorney for EAI and a member of the firm that represented EAI; (4) EAI executed a mortgage, which purported to be the mortgage called for by the modified plan but which in fact covered only the marina and not the restaurant; (5) and in July and August 1978, an attorney for EAI and Gerald Exten represented to the bankruptcy court that the creditors had in fact received the mortgage required by the modified plan. This court concludes that Judge Lebowitz did not err in finding that the Trustee has shown a likelihood of success in a plenary suit to set aside the conveyance as fraudulent.

Topside and GAC, relying on *In re Waters,* 93 F.2d 196, 114 A.L.R. 1368 (5 Cir.1937), and the cases cited therein, also argue that insurance covering property conveyed in fraud of creditors does not take the place of the property after that property's destruction by fire, and therefore, that the proceeds of such insurance are not subject to the claims of the conveyor's creditors.

In *Waters, supra,* 93 F.2d at 198–99, a husband had conveyed to his wife in 1928 land upon which an old house stood. In 1929, the old house was repaired and enlarged; part of the money for that work was borrowed from a building and loan association, which required that insurance be taken out on the property, with loss payable to it "as its interest might appear." The policies were taken out in the name of the wife, and she paid the premiums thereon. In February 1930, fire destroyed part of the improvements. In June 1930, bankruptcy proceedings were instituted against the husband, and shortly thereafter he was adjudged a bankrupt. Creditors of the husband argued that the property had been conveyed by the husband to his wife in order to defraud his creditors. There was no allegation that the wife had participated in the fraud or had in any way conspired with her husband. The Fifth Circuit held that neither the trustee in bankruptcy nor the creditors of the husband had any interest in the insurance. *Id.* at 199.

In the case at bar, Gerald Exten, who had been president and sole stockholder of EAI, was president and the majority shareholder of Topside, which purchased the policy. He was also the sole general partner in GAC, which had received the restaurant from EAI and which was the beneficiary of that policy. Gary Goldstein, who had been attorney of record for EAI, and one of his partners, Charles Tatelbaum, were directors of Topside and limited partners in GAC. Both Gerald Exten and Gary Goldstein were aware that the modified plan required that a mortgage covering both the restaurant and marina be given to the creditors. GAC and Topside were not innocent parties, if the conveyance was fraudulent. See *Sampsell v. Imperial Paper Color Corp.,* 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941).

Furthermore, EAI conveyed the restaurant to GAC after EAI had filed a petition in the Bankruptcy Court for an arrangement pursuant to Chapter XI of the Act. Topside purchased the insurance policy and the restaurant burned after EAI had been adjudicated a bankrupt and after the Trustee had instituted an action in state court to set aside the conveyance as fraudulent. In *Waters, supra,* 93 F.2d at 198–99, the property was conveyed, the policy was purchased and the property burned before bankruptcy proceedings were initiated.

This court concludes that if the Trustee succeeds in setting aside the conveyance as fraudulent, the Trustee will be able to recover the insurance proceeds for the bankruptcy estate. There is little authority on the point, but such as there is supports this conclusion. See *Allstate Insurance Co. v. Walker,* 79–1 U.S.T.C. ¶ 9181, at 86, 287 (E.D.Tenn.1978); see also *Pennsylvania Trust Co. of Pittsburgh v. Greenberg,* 31 F.2d 678, 679 (3 Cir.1929).

This conclusion makes it unnecessary for this court to consider whether the Trustee could also rely on § 70(e)(2) of the Act.

\* \* \*

The order of the Bankruptcy Court, dated 13 March 1980, granting a preliminary in-

junction against Topside and GAC is hereby AFFIRMED.

