**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

OMEGA WORLD TRAVEL,
INCORPORATED,
<u>Plaintiff-Appellee,</u>

v.

TRANS WORLD AIRLINES,                                        N o .
96-1368
<u>Defendant-Appellant,</u>

and

AIRLINES REPORTING CORPORATION,
<u>Defendant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-96-201-A)

Argued: January 29, 1997

Decided: April 2, 1997

Before HALL and LUTTIG, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Reversed by published opinion. Judge Luttig wrote the opinion, in
which Judge Hall and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** R. Hewitt Pate, HUNTON & WILLIAMS, Richmond,
Virginia, for Appellant. Barry Roberts, ROBERTS & HUNDERT-

MARK, Chevy Chase, Maryland, for Appellee. **ON BRIEF:** Thomas
G. Slater, Jr., Sarah C. Johnson, HUNTON & WILLIAMS, Rich-
mond, Virginia; Charles E. Bachman, O'SULLIVAN, GRAEV &
KARABELL, L.L.P., New York, New York, for Appellant.

_____

**OPINION**

LUTTIG, Circuit Judge:

The dispute before us arose from Omega World Travel's conduct
as a ticketing agent for Trans World Airlines pursuant to the
"Agency
Reporting Agreement" (ARA), a standard contract prepared by the
Airlines Reporting Corporation (ARC). Because Omega, over TWA's
strenuous objections, persisted in marketing TWA tickets for a com-
pany controlled by former TWA controlling shareholder Carl Icahn,
TWA filed a suit against Omega in Missouri state court, alleging
that
Omega's sale of the Icahn tickets violated the ARA and Omega's
agency obligations of loyalty and good faith. Omega in turn sued
TWA and ARC in the federal district court for the Eastern District
of
Virginia on federal antitrust and state contract law grounds in the
action underlying the appeal <u>sub judice</u>. After TWA allegedly threat-
ened to terminate Omega as its agent, Omega sought, and the
district
court granted, a preliminary injunction prohibiting TWA from termi-
nating the agency relationship between the two companies. We stayed
the injunction and thereafter denied a motion by Omega to dissolve
the stay. TWA, in the interim between our two orders, terminated
its
agency relationship with Omega. Before us now is TWA's appeal of
the district court's mandatory preliminary injunction. Because
neither
Omega's state-law claims nor its federal antitrust claims support
the
extraordinary mandatory injunction granted by the district court,
we
reverse the district court's grant of injunction.

The district court granted the preliminary injunction based upon
its
belief that there was "some likelihood" that Omega would prevail on
the merits of its claims against TWA. J.A. at 45. **1** Although it is
not

_____
**1** District courts should only grant preliminary injunctions in
cases
"clearly demanding" such interim relief, particularly where, as
here, the

entirely clear from the court's bench ruling, we understand the district
court to have based its conclusion more upon its assessment that
Omega's federal antitrust claims might ultimately prove meritorious,
than on a belief that there was a likelihood that Omega would prevail
on its state law contract claims against TWA. Neither set of claims,
we believe, will support the mandatory injunctive relief granted.

Omega's claim that the ARC system violates the Sherman Act can-
not, as a matter of law, support an injunction requiring TWA to
remain involuntarily in a contractual business relationship with
Omega. The purpose of interim equitable relief is to protect the
movant, during the pendency of the action, from being harmed or fur-
ther harmed in the manner in which the movant contends it was or
will be harmed through the illegality alleged in the complaint. Thus,
a preliminary injunction may never issue to prevent an injury or harm
which not even the moving party contends was caused by the wrong
claimed in the underlying action. As the Eighth Circuit held in Devose
v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994), "a party moving for
a preliminary injunction must necessarily establish a relationship
between the injury claimed in the party's motion and the conduct
asserted in the complaint."

Here, Omega sought and obtained a mandatory preliminary injunc-
tion in order to prevent the harm that would result were its agency
relationship with TWA terminated. In its underlying complaint, how-
ever, Omega alleges that that very same relationship is invalid under
the Sherman Act and that it has been injured by the continuation of
that relationship into which it was allegedly coerced. Thus, as TWA
emphasizes, Omega literally seeks through its antitrust claim to dis-
solve the very contractual relationship which it seeks to have pre-
served through preliminary injunction. When the injury that the

_____

interim relief does more than merely preserve the status quo. Direx Israel
v. Breakthrough Medical Corp., 952 F.2d 802, 814-15 (4th Cir. 1991);
Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980). Although the dis-
trict court seemed to believe that the preliminary injunction in question
preserved the status quo agency relationship, the injunction is

best char-
acterized as mandatory because it orders the parties to continue in a rela-
tionship that would otherwise, under the contract, be terminable at will.

3

movant seeks to prevent through a preliminary injunction is not only
unrelated, but directly contradictory to, the injury for which it seeks
redress in the underlying complaint, then a preliminary injunction
simply should not issue.[2]

To the extent, if any, that the district court believed there was a
likelihood that Omega would succeed on its state law breach of con-
tract claim, we believe the district court was likewise clearly mis-
taken. Section X(E) of the ARA expressly provides that "[a] carrier
appointment may be terminated as between the Agent and any indi-
vidual carrier at any time by notice in writing from one to the other."
Appellant's Br. at 3. No other contractual provision addresses the
right of either party to terminate the contract. Thus, as Omega itself
readily concedes, TWA was permitted under the contract to terminate
Omega "at will." Given that the parties bound themselves contractu-
ally to an "at will" relationship, terminable by either party at any time,
and that under neither Virginia nor Missouri law can an implied duty
of good faith and fair dealing override explicit contract terms, see,
e.g., Riggs National Bank v. Linch , 36 F.3d 370, 373 & n.5 (4th Cir.
1994); Cameron, Joyce & Co. v. State Highway Commission, 166
S.W.2d 458, 460 (Mo. 1942),[3] none of the reasons Omega ascribed

---

[2] Omega did not specifically urge in its preliminary injunction motion
that the threatened termination would be in furtherance of a restraint of
trade. Omega asserted only that TWA's termination threat was in retalia-
tion for Omega's institution of the antitrust suit. J.A. at 106. Omega does
allege in its amended complaint that TWA terminated Omega in further-
ance of TWA's restraint of trade. The amended complaint, however, was
not before the district court when it ruled on the preliminary injunction
motion, and, consequently, we do not consider that complaint in judging
whether the preliminary injunction was properly awarded.
[3] There is some disagreement regarding whether Missouri law or Vir-
ginia law will ultimately govern the contract dispute between these two
parties. Omega argued to the district court that Virginia law

prohibited
a bad faith termination, but the district court stated that Omega's claims
are "heavily dependent on Missouri law." <u>Omega World Travel, Inc.</u> v.
<u>Trans World Airlines, Inc.</u>, No. 960201-A (E.D. Va. Oct. 23, 1996).
Because of the coincidence of law on the subject of whether an implied
term of good-faith takes precedence over an explicit contractual term to
the contrary, we need not concern ourselves here with which law will,
in the end, be applicable.

4

to TWA in its preliminary injunction motion for threatening termina-
tion of the relationship likely would, as a matter of law, prevent TWA
from terminating the relationship with Omega.

Omega does contend in its amended complaint, as previously
noted, that TWA's actual termination of the relationship subsequent
to our stay of the district court's injunction was in furtherance of
TWA's alleged restraint of trade. See supra note 2. However, even
assuming that TWA could not exercise its contractual right to termi-
nate Omega at will if such termination was in furtherance of a
restraint of trade, that allegation was not before the district court and
therefore, again, is not properly considered as a possible justification
for award of the mandatory injunction now before us.

For the reasons stated, the district court's grant of the preliminary
injunction is reversed.

REVERSED

5