In the Matter of Lary M. OSBORN and Ruth M. Osborn, Bankrupts.

Lary M. OSBORN and Ruth M. Osborn, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF TREASURY—INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy Nos. 77–00655–B–W–3, 77–00656–B–W–4.

United States District Court, W. D. Missouri, W. D.

March 23, 1979.

C. Carl Kimbrell, III, Kansas City, Mo., for plaintiffs.

Max H. Lauten, Trial Atty., Dept. of Justice, Tax Div., Washington, D. C., Judith M. Strong, Asst. U. S. Atty., Kansas City, Mo., for defendant.

DECREE OF NONDISCHARGEABILITY IN BANKRUPTCY OF PLAINTIFF LARY M. OSBORN'S INDEBTEDNESS TO DEFENDANT IN THE FORM OF PENALTIES IMPOSED PURSUANT TO SECTION 6672, TITLE 26, UNITED STATES CODE, AND JUDGMENT FOR DEFENDANT AND AGAINST PLAINTIFF LARY M. OSBORN IN THE SUM OF $60,927.26

DENNIS J. STEWART, Bankruptcy Judge.

I

*Findings of Fact*

Section 6672, Title 26, United States Code, provides that a person who is "required to collect, truthfully account for, and pay over" withholding and social security taxes owed by a corporation and "who willfully fails to collect such tax, or truthfully account for and pay over such tax" is "liable to a penalty equal to the total amount of the tax evaded." In *United States v. Sotelo*, 436 U.S. 268, 275, 98 S.Ct. 1795, 1800, 56 L.Ed.2d 275, 282 (1978), the Supreme Court determined that the liability for penalties assessed under § 6672, *supra*, is not dischargeable in bankruptcy under the provisions of § 17a(1)(e) of the Bankruptcy Act [1] "at least in a case in which . . . the § 6672 liability is predicated on a failure to pay over, rather than a failure initially to collect, the taxes."

In the action at bar, the plaintiffs, who are the bankrupts in these proceedings, requested that the court of bankruptcy render its decree declaring the penalties assessed against them under § 6672, *supra*, liabilities of Lamplighter Electric, Inc., and H & O Enterprises, Inc., corporations in which they were the sole stockholders and managing officers,[2] to be dischargeable in bankruptcy. The defendant Internal Revenue Service

---

**1.** That provision of the Act pertinently provides that "[a] discharge in bankruptcy shall release a bankrupt from all of his provable debts . . except such as . . . are taxes . . . which the bankrupt has collected or withheld from others as required by the laws of the United States . . . but has not paid over."

**2.** There is no contradiction in the evidence in this regard.

counterclaimed for a decree of nondischargeability and a judgment, pursuant to § 17c(3) of the Act for the amount of the penalties assessed.

After the parties had sought and been granted several delays in the trial of the matter,[3] the trial was conducted on October 26, 1978, with leave being granted to the defendant to adduce certain documentary evidence within ten days thereafter.[4] In substance, the evidence offered by the defendant in the trial of October 26, 1978, and the period of time which followed, was to the following effect: By virtue of its self-authenticated assessments,[5] the defendant purported to show that penalties pursuant to § 6672, *supra*, had been assessed against Lary M. Osborn in the sum of $60,927.26 and against the plaintiff Ruth M. Osborn in the sum of $61,872.60.[6] These amounts represented withholding and social security liability of Lamplighter Electric, Inc., for the period dating from January 1, 1975, through December 31, 1975, and for H & O Enterprises, Inc., from October 1, 1975, through March 31, 1976. Further, the defendant produced the testimony of Gabriel Buser, a revenue officer in the Internal Revenue Service stationed in Jefferson City, to the following effect: Prior to 1975, Mr. Buser had had cause to contact the plaintiff Lary M. Osborn on three separate occasions with respect to delinquent taxes. The first occasion was in 1971 in regard to "some taxes owed individually" as employment taxes for Lamplighter Electric before it was incorporated. These taxes were ultimately brought up to date by Lary M. Osborn.[7] Then again, however, after Lamplighter Electric had been incorporated, Mr. Buser was again called upon to attend to some delinquent returns for 1973 and 1974. It was Mr. Osborn who had filed the delinquent return and who thereafter paid the delinquency with penalties and interest.[8] Later in the year 1974, the delinquencies of Lamplighter Electric, Inc., had mounted to "somewhere in excess of $20,000." Again, the necessity of making some arrangement to cure the delinquencies was brought to Mr. Osborn's attention by Mr. Buser. Thereupon, Mr. Osborn, according to Mr. Buser's testimony, liquidated the delinquencies in two or three payments simultaneously with his making of the current tax payments. In connection with this transaction, Mr. Buser, according to his testimony, informed Mr. Osborn of the advisability of beginning a "payroll account" into which he should place the entire payroll (including the amounts to be paid as withholding and social security tax), then write checks for the "net payroll," leaving the remainder to pay the taxes.

---

3. By order entered herein on August 18, 1978, this cause was set for trial on September 25, 1978. Thereupon, on September 15, 1978, the plaintiffs moved for a 30-day continuance of the trial date on the grounds that settlement negotiations were nearly concluded. And, prior to August 1978, when the court had made motions to fix a trial date in this matter, the parties advised the court that, because of continuing settlement negotiations, there was "no hurry" in setting this action for trial.

4. At the trial of this cause, the defendant did not yet have its assessments properly sealed so as to be self-authenticating under the Federal Rules of Evidence. Therefore, it was granted 10 days following the trial to submit properly authenticated assessments. Plaintiffs were granted to November 17, 1978, to file a post-trial brief.

5. See notes 14 et seq., *infra*.

6. In its summary of the several assessments submitted after trial, the Government states that, "[a]s shown by Exhibits 1 through 3, plaintiff Lary Osborn is indebted to the defendant in the total amount of $60,927.26. As reflected by Exhibit 1, plaintiff Lary Osborn has received $945.34 in credits from overpayments of federal income taxes . . . plaintiff Ruth Osborn is indebted in the total amount of $61,-872.60. This differs from the total amount owed by Lary Osborn because she has not been credited with income tax overpayments."

7. The testimony of Mr. Buser in this regard is to the effect that he dealt only with Mr. Osborn.

8. See note 7, *supra*.

This advice was apparently not heeded, however, for, according to Mr. Buser's testimony, he next had occasion to contact Mr. Osborn in the summer of 1975 when the delinquent accounts of Lamplighter, Inc. had risen to the "neighborhood of $50,000–75,000." Mr. Buser at this time filed tax liens and a notice of attachment upon the "one known bank account" of the plaintiffs. Mr. Osborn at this time according to Mr. Buser's testimony, acknowledged that the delinquent taxes were due and entered into an agreement with Mr. Buser for the purpose of eliminating the overdue tax liability of Lamplighter. This agreement substantially included provisions (1) to pay all current withholding taxes promptly through deposits in a certain account,[9] (2) to render a complete financial statement to Mr. Buser so that the ability of the plaintiffs to pay could be determined, and (3) as funds became available, to apply them against delinquent payroll taxes. But Mr. Osborn failed to live up to the agreement—as Mr. Buser testified—in failing to make the deposits due on November 15, 1975, and December 15, 1975. These same arrangements pertained to a tax indebtedness then due from H & O Enterprises in a delinquent sum of less than $10,000.

The defendant rested upon adducing the certified copies of the assessments and the testimony of Mr. Buser. The plaintiffs, though granted an explicit opportunity to offer evidence, expressly declined to do so.[10] Therefore, the court of bankruptcy must accept the uncontradicted facts adduced by the defendant and does so. The facts recited above as being evidenced by the uncontradicted assessments and the testimony of Mr. Buser are hereby found as the material facts in this case.[11]

9. The method apparently to be used was, as described above in the text of this memorandum, to deposit the entire gross payroll (including salaries and the amounts to be withheld) in the bank account, then write checks for the net payroll (the salaries), leaving the deducted taxes in the account.

10. The court, at the conclusion of the hearing on October 26, 1978, offered the plaintiffs an opportunity to present evidence at that time

## II

### Conclusions of Law

The paucity of evidence adduced in this matter, the changes in the law relating to burden of proof and other procedural and substantive issues which may have been worked by *United States v. Sotelo, supra,* and *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), and the great magnitude of penalties imposed (amounting to "a potentially crushing liability . . . —a liability that is nondischargeable [if at all] in its entirety and virtually in perpetuity"[12]) have given the court of bankruptcy great reason to pause and deliberate in rendering its decision in this case. This has been particularly so when the parties have not adduced evidence respecting the details and circumstances surrounding the operative events which have been testified to by Mr. Buser. Rather, they have insisted that the court render its decision on the basis of the rather skeletal evidence adduced. Therefore, the court is obliged to apply the governing legal principles to a record which seems in many respects to provide an unsatisfactory basis for the relatively momentous decision which must now be made.

On the basis of those facts, there can really be little doubt that all the elements for liability under § 6672, *supra,* are clearly evidenced except the necessary element of "willfulness." The plaintiffs have objected to the sufficiency of the certified assessments to establish the fact that penalties are due and the amount of the penalties, but they have offered no contradictory evidence and in fact have formally admitted in open court, through the statements

and to present evidence after the offer of properly-authenticated assessments had been completed. Both opportunities were expressly declined.

11. No reason appears to discredit any portion of the uncontradicted testimony of Mr. Buser.

12. See the dissenting opinion of Rehnquist, J., in *United States v. Sotelo, supra.*

of their counsel, that most of the amount sought by the Internal Revenue Service is in fact due.[13] The applicable law, under these circumstances, is to the effect that the certified assessment is entitled to the presumption of correctness and the presumption prevails when no contradictory evidence is adduced.[14]

Further, it appears that there can be little bona fide doubt respecting the responsibility of at least Lary M. Osborn,[15] with whom Mr. Buser repeatedly negotiated respecting the payment of delinquent taxes and who was a sole stockholder, together with his wife, in both the corporations involved.

It is apparently the position of the Internal Revenue Service, however, with respect to the element of "willfulness" that the certified assessment is sufficient to shift to the plaintiffs the burden of proving lack of willfulness.[16] It has been held that such is the rule in cases in which the taxpayer, having paid the penalty assessed, sues for a refund of it.[17] It has further been held that this same rule applies even when the tax authority brings a collection suit.[18] But there are some cases to the contrary.[19] Even, however, in those cases in which it is said that the burden of proof is upon the government, "it has also been recognized that the government is entitled to the benefit of a presumption of administrative regularity arising from the assessment, such presumption constituting *prima facie* proof that the person against whom the assessment was made was a person responsible for collecting, accounting for, and paying over the taxes, and willfully failed to perform such duties, so that unless the person against whom the penalty was assessed adduces evidence contesting this *prima facie* proof, the government will be entitled to judgment." Annot., Construction, Application, and Effect, With Respect to Withholding, Social Security, and Unemployment Compensation Taxes of Statutes Imposing Penalties for Tax Evasion or Default, 22 A.L.R.3d 8, 212 (1968). Under this rule,

---

13. In their post-trial memorandum, the plaintiffs do not assert that there is improper certification (and therefore self-authentication) of the assessments, but rather contend that the "continuance to allow submission of this evidence was improper." As to this contention, it can only be said that the grant or denial of a continuance is within the sound discretion of the trial court and that it would appear to have been arbitrary and capricious not to grant the Government an opportunity to resolve the technical barrier to admission of available and material evidence. It must also be mentioned that plaintiffs were granted an express opportunity to contradict the assessments either on October 26, 1978, or at a later date and they declined the opportunity. See note 10, *supra*. Plaintiffs also complain in their post-trial brief that the assessments are not sufficiently complete to demonstrate their reliability; that "these claimed certificates of assessments and payments indicate no section under which said assessments were made." The assessments do indicate, however, that they constitute 100% penalties for the two corporations' tax liabilities for the periods here in question. Further, Mr. Buser testified that were based upon the Forms 941 filed by the plaintiffs themselves and that the assessments represented liability which he knew to be due from the two corporations. Further, in the course of the trial of October 26, 1978, plaintiffs offered to dismiss the claim of nondischargeability and consent to the allowance of the Government's claim in the sum of approximately $42,000.

14. It is generally said that the Government has the burden in a collection case to demonstrate responsibility and willfulness. *Psaty v. United States*, 442 F.2d 1154 (3d Cir. 1971). But this burden is satisfactorily met when the assessments assigning responsibility and showing the assessments to be unpaid are not contradicted or explained by the taxpayers. See, e. g., *United States v. Abrahams*, 312 F.Supp. 1035, 1037 (S.D.N.Y.1970).

15. See page 437 of the text of this memorandum, *infra*.

16. See note 14, *supra*.

17. *Datlof v. United States*, 252 F.Supp. 11 (W.D.Pa.1966), affirmed 370 F.2d 655 (3d Cir. 1966), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967).

18. *United States v. Abrahams, supra* note 14.

19. See, e. g., *Schweitzer v. United States*, 193 F.Supp. 309 (D.Neb.1961). It must be mentioned that, even if this questioned case promulgates the proper rule, Mr. Buser, for the reasons stated below in this memorandum, has rendered testimony which, uncontradicted, establishes the responsibility of Mr. Osborn and his willful failure to pay over the taxes.

uncontradicted and unexplained evidence of the responsible person's making a decision to meet a payroll or pay operating expenses with knowledge that taxes were due is said to warrant a finding of liability under § 6672, *supra*.[20] Again, in this regard, the uncontradicted assessments are regarded as sufficient evidence, for they purport to show that, although a payroll has been met, the taxes have not been withheld or paid over to the Government.[21] When the information respecting knowledge and intention would most likely be solely available to the "responsible person," it is difficult to imagine how it would otherwise be possible for the Government to make a *prima facie* case.

But even these seemingly immutable procedural principles may have been altered by the decision of the Supreme Court in *Slodov v. United States, supra*. Therein, it was noted that § 6672 "cannot be construed to impose liability without fault" (436 U.S. at 254, 98 S.Ct. at 1789, 56 L.Ed.2d at 266); that the same section "cannot be read as imposing upon the responsible person an absolute duty to 'pay over' amounts which should have been collected and withheld" (*Id.*, 436 U.S. at 254, 98 S.Ct. at 1788, 56 L.Ed.2d at 265–266); and that "[t]he fact that the provision imposes a 'penalty' and is violated only by a 'willful failure' is itself strong evidence that it was not intended to impose liability without personal fault." (*Id.* 436 U.S. at 254, 98 S.Ct. at 1788, 56 L.Ed.2d at 266). In Justice Rehnquist's concurring opinion, these statements are further refined to the effect that:

". . . both the language and history of § 6672 make it perfectly clear that liability for this penalty cannot be imposed in the absence of a willful failure and the word 'willful,' used as it is in this context in conjunction with the word 'penalty,' requires *some action that tends to impede collection of the corporation's trust fund taxes before liability can attach*." (Emphasis added).

The dissenting opinion points out that this leaves it open as to whether "willful," as the prior law held, "connotes nothing more than a conscious act or omission which violates a known legal duty" (436 U.S. at 265, 98 S.Ct. at 1794, 56 L.Ed.2d at 273) or whether "the requirement of a 'willful failure' is satisfied only by a showing of conduct which is immoral in some undefined sense." (*Id.*)

Whichever of these two standards actually defines the element, however, the uncontradicted, unexplained testimony of Mr. Buser clearly shows Mr. Osborn's conduct to have been "willful" in both senses. Mr. Buser's having to contact him on three occasions prior to 1975 respecting past due taxes should have, at the very least, put Mr. Osborn on inquiry so that he would have diligently caused the taxes to be paid over for the period in 1975 and 1976 during which the payments were not made. The fact of his knowingly having failed to pay over the taxes, within the meaning of § 6672, is thereby established.[22] If more is needed to establish liability—if "immoral conduct" is in fact the standard—it is established by Mr. Osborn's promising unconditionally—after many admonitions—to deposit his gross payroll in a separate bank account and pay only the net payroll out of it and to render a financial statement to Mr. Buser and his unexplained failure to keep his promise. For, although granted an opportunity to excuse or explain this fail-

---

**20.** When nonpayment results from "a voluntary and intentional decision (whatever the reason) to apply corporate funds to other obligations or for other purposes," the Government has demonstrated the knowing and intentional decision necessary to establish willfulness. The only possible unsuccessful defense in this case, it would seem, at least under the law prior to *Slodov*, is when "there are no funds at all" in the corporation. See *Campbell v. Nixon*, 207 F.Supp. 826, 830 (E.D.Mich.1962).

**21.** The law presumes that, once a payroll has been met, the responsible person has in fact collected the taxes. See § 3123, Title 26, United States Code. And, in this case, the presumption is not rebutted by any evidence to the contrary.

**22.** "Willful conduct also includes failure to investigate or to correct mismanagement after having notice that withholding taxes have not been remitted to the Government." *Kalb v. United States*, 505 F.2d 506, 511 (2d Cir. 1974).

ure, he declined to do so, thus leaving the court with the only alternative of finding the failure to be unexcused and unmitigated. Further, his *repeated* failure to superintend the payment of payroll taxes, after *repeated* notice of delinquencies, serves as proof of the same type of conduct which doubtlessly significantly impeded collection of the taxes. Indeed, in the absence of the testimony of plaintiff Osborn himself, it is difficult to imagine how the Government might have conceivably proven any stronger case of "willfulness." For if the *Slodov* rule means that the burden falls upon the Government to show the financial ability of the corporation to make payments of withholding and social security taxes *in addition to* operating expenses and net payroll,[23] Mr. Osborn has deprived the Government of its opportunity to adduce such proof by means of his breaking his promise to render a complete financial statement.

The absence of any testimony by Mr. Osborn also compels a conclusion that the failure was to pay over, rather than to collect, the deductions and the liability is therefore nondischargeable under the rule of *United States v. Sotelo, supra.*[24] But, with respect to Ms. Osborn, the uncontradicted testimony of Mr. Buser clearly establishes that he dealt exclusively with her husband. Therefore, the Government is not entitled to a decree of nondischargeability with respect to her. See *United States v. Sotelo, supra*, 436 U.S. at 280, 98 S.Ct. at 1802, 56 L.Ed.2d at 285, n. 13.

It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED AND DECREED that Lary M. Osborn's indebtedness to the defendant in the sum of $60,927.26 be, and it is hereby declared to be nondischargeable in bankruptcy. It is further

ADJUDGED that the defendant have and recover the sum of $60,927.26 plus interest and reasonable costs from the plaintiff Lary M. Osborn.

**23.** Under the prior law, however, it was always held that the corporation's financial condition was irrelevant to the question of willfulness. See, e. g., *United States v. Strebler*, 313 F.2d 402, 403–404 (8th Cir. 1966).

**24.** Under the holding in *Sotelo*, nondischargeability applies to the failure to pay over rather than the failure to collect the taxes. See note 1, *supra*. But the collection of these taxes, in the absence of any countervailing evidence, must be presumed. See note 21, *supra*.