In the Matter of James Randall SMITH, and Bonnie Jo Smith, Debtors.

James Randall SMITH, and Bonnie Jo Smith, Plaintiffs,

v.

UNITED STATES of America, Internal Revenue Service, Defendant.

Bankruptcy No. 80–03601–3.
Adv. A. No. 84–0008–3.

United States Bankruptcy Court, W.D. Missouri, W.D.

Sept. 17, 1986.
As Corrected Oct. 17, 1986.

Stephen B. Strayer, Kansas City, Mo., for plaintiffs.

Michael Quigley, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., David DeTar Newbert, Asst. U.S. Atty., Kansas City, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE AND JUDGMENT DECLARING PLAINTIFFS NOT LIABLE FOR CORPORATE TAX OBLIGATIONS UNDER § 6672 TITLE 26, UNITED STATES CODE

DENNIS J. STEWART, Chief Judge.

This is an action brought by the debtor, pursuant to § 505 of the Bankruptcy Code [1], to determine the legality of a tax sought to be imposed upon him by the Internal Revenue Service. The defendant, both prior to trial and thereafter, challenged the jurisdiction of the bankruptcy court to render the decision requested by the plaintiffs. The issues raised by the challenge to jurisdiction are novel and ingenious, but they appear possibly to transgress the clear letter of § 505(a) of the Bankruptcy Code which confers jurisdiction on the bankruptcy court to determine the legality and amount of any unpaid tax sought to be imposed upon the estate or the debtor.[2] This court therefore rejects the contention that it is without jurisdiction albeit with a hesitation which has given it considerable pause in rendering its decision in this action [3], and proceeds to adjudicate the merits of this action.

The trial of merits of this action was conducted by the bankruptcy court on the dates of July 15, 1985, and August 21, 1985, in Kansas City, Missouri. The debtor

---

**1.** Section 505(a) of the Bankruptcy Code pertinently provides as follows: "Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."

**2.** See note 1, *supra.*

**3.** An extremely perplexing jurisdictional question has given this court great pause in filing its final decision in this action. The decision of our district court in *Matter of Booth Tow Services, Inc.,* 53 B.R. 1014 (W.D.Mo.1985), was one in which it was held that a bankruptcy court had no jurisdiction to determine the § 6672 liability of a nondebtor, even when that determination has an effect on the bankruptcy estate. In that decision, it appears that the district court held that such an action was not only beyond the "core" jurisdiction of the bankruptcy court, but also beyond the "related" case jurisdiction of the bankruptcy court and the district court. For, instead of treating the decision of the bankruptcy court as recommended findings of fact and conclusions of law under § 157(c)(1), Title 28, United States Code, as it might have done had it considered the case to be within the "related" case jurisdiction of the district court, the district court rather reversed the bankruptcy court decision and remanded the action with instructions that it be *dismissed.*

The complete rejection of federal jurisdiction may have ramifications which affect jurisdiction in the action at bar. In this action, despite the fact that the plaintiff is a debtor, the joined issue is at best a related issue. For there is no issue in this action but that the liability of the plaintiff, if any, would be for nondischargeable taxes. The only issue in this action is that of the debtor's liability under § 6672 of the Internal Revenue Service Code. It is an issue which has absolutely no impact on estate collection, administration, or distribution. It is also an issue which arises exclusively under nonbankruptcy law. In similar circumstances, in which the issue of liability *vel non,* rather than dischargeability *vel non,* is the litigable issue, and that issue arises under nonbankruptcy law, it has been held that the issue should be tried and determined in a nonbankruptcy court, *Matter of Brownsberger,* 61 B.R. 22 (Bkrtcy.W.D.Mo.1985). In this case, that would seem to be the district court, which is granted express statutory jurisdiction of the "responsible person" issue. See § 6672(b)(2) to the following effect:

"If, within 30 days after the day on which his claim for refund with respect to any penalty under subsection (a) is denied, the person described in paragraph (1) fails to begin a proceeding in the appropriate United States district court (or in the Court of Claims) for

then appeared personally and by counsel, Stephen B. Strayer, Esquire, and the Internal Revenue Service appeared by counsel, Michael B. Quigley, Esquire.

the determination of his liability for such penalty, paragraph (1) [providing for the extension of the period for collection where a bond is filed] shall cease to apply with respect to such penalty, effective on the day following the close of the 30–day period referred to in this paragraph."

But, as observed above, in the *Booth Tow Services* case, *supra,* the district court rejected the exercise of any such jurisdiction. This left the bankruptcy court with a dilemma touching upon the very foundations of bankruptcy court jurisdiction and classification. A court has as much of a duty to exercise jurisdiction when it clearly has jurisdiction as it has to decline jurisdiction when there is a legitimate question as to its existence. And there can be little question that "related" case jurisdiction exists in the action at bar. The decision in *United States v. Huckabee Auto Co.,* 46 B.R. 741 (M.D.Ga.1985), upon which the bankruptcy court relied in *Matter of Booth Tow Services, supra,* was really only to the effect that a bankruptcy court had no jurisdiction to *enjoin* the enforcement of a § 6672 penalty. It did not hold that the bankruptcy court or the district court could not make such a determination. Such a holding would in fact oust the debtor or related party of the most accessible forum in which he might have under § 6672, *supra,* itself.

This court has therefore spent a not inconsiderable period of time in considering whether to make recommended findings of fact and conclusions of law pursuant to § 157(c)(1), *supra.* For, as observed above, the action at bar is as much a "related" action as if the debtor brought suit to determine the legality and magnitude of a postpetition debt (as to which, as in the case at bar, the nondischargeability of the indebtedness is patent. (In this action, there is not even any issue of *how much* of an indebtedness is a prepetition debt and how much a postpetition debt, see *Matter of Colin,* 44 B.R. 704 (Bkrtcy.W.D.Mo.1984)).

But, if recommended findings of fact and conclusions of law were transmitted to the district court, it could not be assumed, in view of the *Booth Tow Services* decision, *supra,* that the district court would exercise jurisdiction under § 6672, *supra.* And, in "related" cases, it is the duty of the bankruptcy court to exercise jurisdiction when the district court cannot or will not do so. *Matter of Burstein-Applebee Co.,* 63 B.R. 1011 (Bkrtcy.W.D.Mo.1986); *Matter of Phillips House Assoc. Inc.,* 64 B.R. 912 (Bkrtcy.W.D. Mo.1986); *Matter of Brewer,* 65 B.R. 75 (Bkrtcy. W.D.Mo.1986); *Matter of First United Partners 9,* 58 B.R. 685 (Bkrtcy.W.D.Mo.1986). This court is reluctant to do so when it may conceivably be

The evidence which was then adduced demonstrated that, during the time periods in question, the debtor occupied a position of somewhat dubious authority in Overland accused of arrogating Article III powers to itself. See *Matter of Richardson,* 52 B.R. 527, 529 (Bkrtcy.W.D.Mo.1985). But the authorities support the exercise of such authority, especially when it is within the statutory authority of the bankruptcy court, as § 505 of the Bankruptcy Code places this action squarely within bankruptcy court jurisdiction. See *Matter of Phillips House Assoc. Inc., supra,* to the following effect:

"Therefore, if this action is to be decided in the federal courts, it is the bankruptcy court which must assume jurisdiction of it and determine it [in view of the district court's inability or declination to do so.] The assumption of such jurisdiction is wholly possible under the 'catch-all' provisions of § 157(b), Title 28, United States Code. But those 'catch-all' subsections have uniformly been interpreted as defining 'related' cases which a bankruptcy court, under § 157(c)(1) of the same title, may hear but not determine. As observed above, however, the rule of necessity demands that the bankruptcy court must determine this action as well as hear it; otherwise, according to the creditable contentions of the trustee, estate administration will either be impossible or so greatly hindered that the purpose of that administration will be defeated."

Any question of whether the assignment of such power to the bankruptcy court converts it into an Article III court under the rule of *Glidden Co. v. Zdanok,* 368 U.S. 814, 82 S.Ct. 56, 7 L.Ed.2d 22 (1962), can be obviated in this action by the district court's treating the decision of the bankruptcy court as recommended findings of fact and conclusions of law and making its own decision on the basis thereof. See *In re Waters,* 93 F.2d 196, 198 (5th Cir.1937), to the following effect:

"We think that the referee went too far in attempting to decree a cancellation of the mortgage summarily; but, since the evidence was all reported stenographically and went up to the judge along with the documentary proof and was fully considered by the judge, who made his own decree, the case has just had the treatment it would have had if a plenary bill had been filed, been reported on by a master, and then considered by the court. The referee made full findings of fact and conclusions of law, as a master would do, and the appellant elaborately excepted to them as if to a master's report. We will treat the case as a controversy arising in bankruptcy by intervention and decided by the judge, review of which on appeal as in equity opens up questions of law and fact."

Park Imports, Inc., for the first, second and third quarters of 1979 and in a Chrysler-Plymouth dealership located in Johnson County, Kansas for the third and fourth quarters of 1979.[4] In the former dealership, he was chief executive officer. In the latter he had some titular or nominal authority which he shared with one Drummond Crews, who had previously been the sole owner and manager of the dealership prior to the debtor's becoming part owner with at least a nominal managerial position.[5] Throughout these periods in question, there was a further dispersion of authority which came about because of the fact that dire economic straits came to affect the dealership. Two banking institutions—Commerce Bank of Kansas City[6] and Patrons State Bank of Olathe and Guaranty State Bank of Kansas City, Kansas[7]—held security interest in virtually all the inventory of the respective dealerships. Therefore, because of the perception of risk of the banks' respective interests, officers of those banks commenced to exercise greater control over the day-to-day affairs of the dealership than a secured creditor would normally exercise. To what precise extent the control was utilized is the crucial issue in this action and one on which the testimony is in conflict. According to the testimony of the debtor and the person who was the bookkeeper for the dealership during this period of time, the control exercised by the banks was absolute and all-pervasive and it was the banks' officers who determined which of the dealership's creditors should or should not be paid. The banks, according to their testimony, sent teams of officials to the dealership each morning and they spent the entirety of the business day there, overseeing sales, the reception of the proceeds of sales, and the payment *vel non* of accounts payable. It was these officers who, according to the testimony of the debtor and the bookkeeper, utilized the leverage which they had against the dealership—the power to close it down by cutting off the sole sources of credit and operating funds from the debtors[8]—to prevent payment of the taxes in question to the Internal Revenue Service. Thus, according to the debtor and the bookkeeper, the bank officials either approved or disapproved each check before it was transmitted and, if it was disapproved, the check was not transmitted to the proposed payee.[9] On each occasion that the debtor or the bookkeeper proposed payment to the Internal Revenue Service, the bank officials exercised their veto power, according to the debtor and the bookkeeper. And the bookkeeper testified that the decisions of the bank officials not to pay the Internal Revenue Service were so definitively expressed that, on one such occasion, the bank officer who was actually acting as the executive officer of Crews Chrysler-Plymouth answered her proposal to pay withholding taxes to the Internal Revenue Service by stating: "F—— the government. I

4. The debtor's complaint identifies these periods as those to which the determination of this court should apply.

5. With respect to Overland Park Imports, there can be little question of the controlling character of the debtor's position prior to the time periods in question, see note 4, *supra,* when the power and authority of the banks came into ascendancy. He was the incorporator; president; and the officer with power to hire and fire, borrow money, sign checks, make payments. He was aware of the nonpayment of tax liabilities here in question at their relevant time periods here in question. The same material facts appear also to be true of the debtor's position with Crews Chrysler-Plymouth, Inc. As of March 14, 1979, he became president and treasurer. His corporation (Winnebago Eldorado Sales, Inc.) owned 80% of the stock. He had virtually the same powers as he formerly had had with Overland Park Imports. And he knew timely of the tax liabilities at a time when funds were available to pay them. But see note 12, *infra.*

6. With respect to Overland Park Imports, Inc.

7. With respect to Crews Chrysler-Plymouth, Inc.

8. There is no contradiction in the testimony that, with respect to both of the corporations with which the debtor was affiliated, see notes 6 and 7, *supra,* the bank's infusion of capital, for the time periods in question, was a necessary lifeline.

9. There is no contradiction in the testimony to this effect.

want my money." Thus, the debtor's contention is that, although he had nominal managerial authority during this period of time and also had check writing authority, the *de facto* control exercised by the bank officials prevented him from exercising it to pay withholding taxes to the Internal Revenue Service.

The testimony of the bank officials is, on the crucial point of whether they prevented payments to the Internal Revenue Service, to the contrary.[10] They admit that they had some concern respecting the operations and financial condition of the dealership during the time periods in question and that they did some recurrent checking on the dealership for that reason. But they deny that they ever forbad the payment of withholding or other taxes or that their demands for payment were so rapacious and pervasive that they necessarily ruled out payment to the Internal Revenue Service. And the bank officer alleged to have made the statement attributed to him by the bookkeeper containing the expletive denied it in his testimony.[11]

But the evidence is clear that, by virtue of their combined security interests of the banks, they actually, in fact, owned the dealership completely and that for those who acted on behalf of the dealership to have acted contrary to the wishes of the banks would have been insuperably difficult, if not impossible. The bank officers themselves do not deny making very meticulous and daily reviews of the operations of both car dealerships during the time periods in question. Although they deny actually determining which creditors should be paid and which should not be paid, there can be little doubt that their virtual omnipresence on the premises gave notice that they expected to be paid first. And, in line with these factual circumstances, this court finds the testimony of the debtor and the bookkeeper to be the more credible. The

evidence of control of operations by the banks convincingly show that it was the bank officers, rather than the debtor or any of the officers and employees of the two dealerships, who determined that the dealerships should continue in business (at a time when their financial conditions were hopeless and all the inventory was actually owned by the bank) so that the banks could have an opportunity to recover the full balances due them.

### Conclusions of Law

The governing statute, § 6672, Title 26, United States Code, provides as follows:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

It appears from the evidence and the briefs of the parties in this case that the only element of the statute which is challenged in this action is whether the debtor is a "responsible person" within the meaning of that statute. A "responsible person," within the meaning of the statute, includes virtually all employees who have the opportunity to make the payments required by the statute and knowledge of the duty to make it. *Matter of Osborn*, 4 B.R. 431, 432 (Bkrtcy.W.D.Mo.1979), affirmed, Civil Action No. 79–0354–CV–W–3 (W.D.Mo. Jan. 20, 1981). But the great breadth of such definitions does not mean that the court

---

**10.** The court must resolve the issue on the basis of credibility, which it does, *infra,* in the text of this memorandum. In this regard, on issues of credibility, our court of appeals has stated that "[t]he deference owed by appellate courts to findings of fact is at its highest where the issue

turns on the resolution of a direct conflict between live witnesses." *In re Windle,* 653 F.2d 328, 331 (8th Cir.1981).

**11.** See note 10, *supra.*

should not take account of realities.[12] If, despite nominal authority, there is no actual authority to make the payment, the 100% penalty provided by § 6672, *supra*, should not apply.[13] Under these legal principles, the decision in this action hinges upon that of credibility, for, if the testimony of the debtor and the bookkeeper is to be believed, they had no actual authority to make payments to the Internal Revenue Service. But, if the testimony of the bank officials is to be held credible, then there remained sufficient latitude in the debtor's authority to permit him to make the required payments to the Internal Revenue Service. Courts must determine these questions on the basis of the appearance and demeanor of the witnesses[14], and on the basis of whether such testimony is in congruence with the other established facts and the usual course of human conduct in such matters.[15] On the basis of the appearance and demeanor of the respective witnesses, this court credits the testimony of the debtor and the bookkeeper. Separately and independently, it must be observed that it would have been strange under circumstances in which the risks to the banks were so great and their interests, at the same time, so all-enveloping, that they would not have exercised meticulous and complete control over the dealership's financial affairs. As observed above, it was the banks who had the hope of recovering the balance due them. The dealerships, according to the evidence, were only involuntary participants in this process to attempt recoupment of the bank's investment. It is true that, under some of the case decisions, corporate officers, even if they are under bank direction, are held to be "responsible persons" within the mean-

ing of § 6672, *supra*, if they "permitted [the corporation] to continue in business and to use trust funds collected on behalf of the United States to become a joint venturer in his business—precisely the result § 6672 was designed to avoid." *Commercial Nat. Bank of Dallas v. United States*, 665 F.2d 743, 758 (5th Cir.1982). In this action, however, as the facts show, it was the bank's decision to continue the businesses and the debtor was an involuntary participant in the process. Under such circumstances, the corporation's officers have been held not to be responsible. *United States v. North Side Deposit Bank*, 569 F.Supp. 948 (W.D.Pa.1983). When the bank and its chief executive officer effectively determined which bills would be paid and which would not be paid, the bank and its officers are properly the "responsible persons." *Commercial Nat. Bank of Dallas v. United States, supra.* The Government appears to place chief reliance on the decision of the United States Court of Appeals for the Eighth Circuit in *Hartman v. United States*, 538 F.2d 1336, 1344 (8th Cir.1976), which would seem to require that the corporate officer resign his office if he is to avoid § 6672 liability. Application of that rule to the particular facts of this case, however, would effectively do away with the rule of "responsibility" and make all officers and employees liable for the penalty regardless of whether they had the opportunity to make the payments. And, in this case, the debtor's power to write checks was nominal only, effectively eliminated by the bank's usurpation of the power to determine who was paid, and enforced through the bank's exclusive control of the day to day operations of each of the dealerships. This case is in these

---

**12.** One of these realities is that monies beyond those which are claimed by a secured creditor in a domineering fashion may not be available to pay the withholding taxes. Thus, the element of "wilfulness" under § 6672 has been interpreted to mean that a responsible person "had knowledge of the tax delinquency and knowingly failed to rectify it, *when there were available funds to pay the government." United States v. Davidson*, 558 F.Supp. 1048, 1056 (W.D.Mich. 1983).

**13.** It is implied in *Brown v. United States*, 591 F.2d 1136, 1141 (5th Cir.1979), that there may be types of security interests or "encumbrances that will excuse taxpayers from applying such funds to payment of withholding taxes."

**14.** *In re Windle*, 653 F.2d 328, 331 (8th Cir. 1981).

**15.** *Id.*

respects distinguishable from the decision in *Howard v. United States*, 711 F.2d 729, 736 (5th Cir.1983). ("A considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness.") This court therefore concludes that the debtor was not a "responsible person" within the meaning of § 6672, *supra.* Therefore, it is hereby,

ORDERED, ADJUDGED, AND DECREED that the debtor James Randall Smith is not liable for the taxes sought to be imposed on him by the Internal Revenue Service under the authority of § 6672, Title 26, United States Code.